UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

      Plaintiff,

  v.           09-cv-637 (LJV) (LGF)

ACQUEST WEHRLE, LLC,
ACQUEST DEVELOPMENT, LLC, and
WILLIAM L. HUNTRESS,

      Defendants.

# MEMORANDUM OF LAW IN SUPPORT OF THE MOTION BY ACQUEST WEHRLE, LLC FOR AN AWARD OF ATTORNEYS' FEES AND COSTS <u>UNDER THE EAJA</u>

**RUPP BAASE PFALZGRAF CUNNINGHAM LLC**
*Attorneys for Defendant, Acquest Wehrle, LLC*
R. Anthony Rupp III, Esq.
Matthew D. Miller, Esq.
1600 Liberty Building
Buffalo, New York 14202
(716) 854-3400
rupp@ruppbaase.com
miller@ruppbaase.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... iii

TABLE OF DEFINED TERMS ................................................................................................. vi

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS AND PROCEDURAL POSTURE ..................................................... 3

ARGUMENT .............................................................................................................................. 3

POINT I...................................................................................................................................... 3

ACQUEST WEHRLE HAS ESTABLISHED THAT IT IS ENTITLED TO RELIEF
UNDER THE EAJA BECAUSE IT IS AN ELIGIBLE PARTY, IT IS THE PREVAILING
PARTY IN THIS ACTION, IT HAS ALLEGED THAT THE GOVERNMENT'S
POSITION WAS NOT SUBSTANTIALLY JUSTIFIED AND THAT RELIEF WOULD
BE JUST, AND IT HAS TIMELY FILED THIS MOTION. ...................................................... 3

   A.   Acquest Wehrle Is an Eligible Party for Relief Under the EAJA Because It Is a
Corporation That Had a Net Worth of Less Than $7 Million and Did Not Have More
Than 500 Employees At the Time That This Action Was Commenced. ................................. 4

   B.   Acquest Wehrle Is the Prevailing Party Because This Action Was Dismissed Without
Any Finding of Liability and Without Acquest Wehrle Paying Any Damages, Penalties,
Fines, or Other Monetary Award............................................................................................ 5

   C.   Acquest Wehrle Has Met Its Moving Burden With Respect Substantial Justification
and Unjust Circumstances Because It Has Alleged That the Government's Position Was
Not Substantially Justified and That Relief Under the EAJA Would Be Just, Which It
Also Has Supported With Evidence. ...................................................................................... 5

   D.   This Motion Is Timely Under the EAJA Because It Was Filed Within 30 Days
After the Expiration of the Right To Appeal the Judgment In This Action. ........................... 8

POINT II .................................................................................................................................... 9

ACQUEST WEHRLE IS ENTITLED TO AN AWARD OF $83,121.68 IN COSTS AND
AN AWARD OF $177,293.70 OR, ALTERNATIVELY, $182,232.43 IN ATTORNEYS'
FEES BECAUSE THESE ARE THE AMOUNTS THAT WERE NECESSARY TO
DEFEND THIS ACTION. .......................................................................................................... 9

   A.   Acquest Wehrle Is Entitled To an Award Of $83,121.68  In Costs Because These
Costs Were for Expert Services Such as Studies, Analyses, Reports, Tests, and Projects
That Were Necessary for Its Defense In This Action............................................................ 10

B.  Acquest Wehrle Is Entitled To an Award of $177,293.70 or, Alternatively, $182,232.43  In Attorneys' Fees Because a Special Factor or the Cost of Living, Respectively, Warrants a Departure From the Statutory Cap On Attorneys' Fees. .............. 11

1.  Special Factor Exists Here Because Rupp Baase Needed To Represent Acquest Wehrle In This Action When No Other Attorneys Had the Unique, Distinctive Knowledge of the Lengthy History of the Wehrle Site  or of the EPA's Regulatory History With Respect to That Site ..................................................................................13

2.  Assuming, Arguendo, That This Court Decides That a Special Factor Does Not Warrant an Increase In Attorneys' Fees, an Increase Based On the Cost of Living Nevertheless Is Warranted ..............................................................................15

CONCLUSION................................................................................................... 14

## TABLE OF AUTHORITIES

Page No.

**CASES**

*Allegheny Bradford v. United States*,
  350 F.Supp.2d 1332 (Ct. Int'l Trade 2004), *app. dismissed*, 132 F. App'x 837
  (Fed. Cir. 2005)..................................................................................................8

*Bean v. Barnhart*,
  473 F. Supp. 2d 739 (E.D. Tex. 2007)..................................................................15

*Chappelle v. Beacon Commc'ns*,
  84 F.3d 652 (2d Cir. 1996)..................................................................................11

*D'Alessandro v. Mukasey*,
  No. 08-CV-914(RJA)(VEB), ..........................2010 WL 1404909 (W.D.N.Y. Mar. 31, 2010),
  *adopted*, No. 08-CV-914, 2010 WL 2710623 (W.D.N.Y. July 6, 2010)............................7, 15

*Easley v. United States*,
  719 F. Supp. 145 (W.D.N.Y. 1989)........................................................................6

*Green v. Bowen*,
  877 F.2d 204 (2d Cir. 1989)..................................................................................7

*Healey v. Leavitt*,
  485 F.3d 63 (2d Cir. 2007)..................................................................................7, 13

*Impresa Construzioni Geom. Domenico Garufi v. United States*,
  531 F.3d 1367 (Fed. Cir. 2008)............................................................................10

*Jewelers Vigilance Comm. v. Vitale*,
  No. 90 CIV. 1476 (MJL), 1997 WL 582823 (S.D.N.Y. Sept. 19, 1997)................................7

*Kaleel v. Shalala*,
  832 F. Supp. 738 (S.D.N.Y. 1993) .........................................................................7

*Kerin v. U.S. Postal Serv.*,
  218 F.3d 185 (2d Cir. 2000)..................................................................................11

*Metro. Van & Storage v. United States,*
　　101 Fed. Cl. 173 (2011) ................................................................................................12

*Nemaizer v. Baker,*
　　793 F.2d 58 (2d Cir.1986); ...........................................................................................7

*Padula v. Colvin,*
　　602 F. App'x 25 (2d Cir. 2015) .....................................................................................7

*Pavia v. Comm'r of Soc. Sec.,*
　　No. 5:10-CV-0818 GTS/DEP, 2013 WL 5652497 (N.D.N.Y. Oct. 15, 2013).........................8

*Pereira v. Astrue,*
　　739 F. Supp. 2d 267 (E.D.N.Y. 2010) .............................................................................6

*Pierce v. Underwood,*
　　487 U.S. 552 (1988)......................................................................................................13

*Rapanos v. United States,*
　　547 U.S. 715 (2006)........................................................................................................4

*Schwarz v. Folloder,*
　　767 F.2d 125 (5th Cir. 1985) ..........................................................................................7

*Shah Bros. v. United States,*
　　9 F. Supp. 3d 1402 (Ct. Int'l Trade 2014) ..............................................................13, 14

*U.S. Army Corps of Engineers v. Hawkes,*
　　136 S. Ct. 1807 (2016)...................................................................................................9

*United States v. Eighty-Eight (88) Designated Accounts Containing Monies Traceable to Exchanges for Controlled Substances,*
　　786 F. Supp. 1578 (S.D. Fla. 1992) ...............................................................................6

**STATUTES**

Page No.

28 U.S.C. § 2412.................................................................5, 6, 8, 11, 12, 13, 15

33 U.S.C. § 1319.................................................................................9

33 U.S.C. §1344.................................................................................9


**RULES & REGULATIONS**

Page No.

33 CFR pt. 331, App. C; EPA,
   *Mem. of Agreement: Exemptions Under Section 404(F) of the*
   *Clean Water Act § VI–A* (1989) ...................................................9

Fed. R. Civ. P. 6.................................................................................11


**OTHER SOURCES**

Page No.

Sunding & Zilberman, *The Economics of Environmental Regulation*
   *by Licensing: An Assessment of Recent Changes to the Wetland*
   *Permitting Process*, 42 Natural Resources J. 59 (2002) .............................4

U.S. Bureau of Labor Statistics, *Frequently Asked Questions*
   (available at https://www.bls.gov/cpi/questions-and-answers.htm#Question_1)
   (last visited Dec. 26, 2017) ...................................................15

# TABLE OF DEFINED TERMS

| Term | Definition |
| --- | --- |
| Acquest | Collectively, the defendants in this action |
| Acquest Wehrle | Defendant, Acquest Wehrle, LLC |
| The ACOE | The U.S. Army Corps of Engineers |
| The CPI | The Consumer Price Index |
| The CWA | The Clean Water Act |
| The EAJA | The Equal Access to Justice Act (28 U.S.C. § 2412) |
| The EPA | The Environmental Protection Agency |
| The Government | The plaintiff in this action |
| The Rupp Declaration or Rupp Decl. | The Declaration In Support of Defendant Acquest Wehrle LLC's Motion Under the EAJA for an Award of Costs and Attorneys' Fees, sworn to on January 2, 2018 |
| The Town | The Town of Amherst, New York |
| The Wehrle site | The property that is located at 2190 and 2220 Wehrle Drive, Amherst, New York |

## PRELIMINARY STATEMENT

In this motion, Acquest Wehrle seeks an award of attorneys' fees and costs pursuant to the EAJA. Simply put, relief under the EAJA especially is warranted here because after being put through the proverbial regulatory rigmarole, Acquest Wehrle is not any closer to knowing the future of its property at the Wehrle site than it was before it expended a significant amount of money on attorneys and wetlands experts. Even though it performed its due diligence before it purchased the Wehrle site, governmental incompetency prevented Acquest Wehrle from discovering a building moratorium for that property. Even more relevant here, the EPA's and the ACOE's governmental bureaucracy and duplicity has led to uncertainty regarding whether the Wehrle site is subject to the CWA. In particular, after the agency that has the primary responsibility to make CWA jurisdictional determinations — *i.e.*, the ACOE — determined that the Wehrle site was not subject to the CWA, the EPA reversed course and rendered a highly unusual "special case" determination that the site was subject to the CWA.

After issuing the self-serving "special case" determination, the EPA began its prosecution of Acquest Wehrle for activity — which had been previously determined to not be environmentally harmful — on the Wehrle site — which had been previously determined to not be subject to jurisdiction under the CWA. This prosecution culminated in this action. As its primary affirmative defense in this action, Acquest Wehrle challenged CWA jurisdiction over the Wehrle site. In furtherance of obtaining a favorable ruling on the merits of this issue, Acquest Wehrle incurred a substantial amount of attorneys' fees and costs from, inter alia, studies and reports from wetlands experts. Before it could get this ruling, however, the

1

Government abandoned this action in a manner that permits it to reassert jurisdiction over the

Wehrle site in the future, thereby making the future of that property uncertain.

As a result, Acquest Wehrle is no closer to determining whether the Wehrle site is

subject to jurisdiction under the CWA than it was before it expended tens of thousands of dollars

in litigation expenses.  Obviously, obtaining a resolution on this issue is incredibly important to

Acquest Wehrle because it will be determinative of the future of its property at the Wehrle site

— *i.e.*, what it can and cannot do there.  For example, the EPA has expressed its willingness to

go after Acquest Wehrle and its owner, Mr. Huntress, for minor land-clearing activities that fall

well short of commercial development.  Accordingly, Acquest Wehrle has to subject itself to a

costly permitting process[1] — with no assurance that it will be successful — in order to do

anything at the Wehrle site.  Therefore, relief under the EAJA especially is appropriate here

because the Government now has abandoned this action in a manner that deprives Acquest

Wehrle of any closure on this issue, while simultaneously retaining the ability to re-subject

Acquest Wehrle to the expensive, burdensome CWA-permitting process.

---

[1]  In its decision in *Rapanos v. United States*, 547 U.S. 715, 721 (2006), the U.S. Supreme Court commented on the costly nature of the permitting process under the CWA.  The Court observed that "[t]he average applicant for an individual permit spends 788 days and $271,596 in completing the process, and the average applicant for a nationwide permit spends 313 days and $28,915 — not counting costs of mitigation or design changes."  *Id*. (citing Sunding *&* Zilberman*, The Economics of Environmental Regulation by Licensing: An Assessment of Recent Changes to the Wetland Permitting Process*, 42 Natural Resources J. 59, 74-76 (2002)).  As a result, more than "$1.7 billion is spent each year by the private and public sectors obtaining wetlands permits."  *Id*. (quoting Sunding & Zilberman at 81).

2

## STATEMENT OF FACTS AND PROCEDURAL POSTURE

The factual and the procedural history of this action is set forth in the accompanying declaration of R. Anthony Rupp III, Esq., sworn to on January 2, 2018. For the convenience of this Court, Acquest Wehrle respectfully directs this Court to that declaration for this factual and the procedural history.

## ARGUMENT

For the reasons discussed below, Acquest Wehrle has established both that it is entitled to an award of attorneys' fees and costs under the EAJA (Point I, infra) and the amount of that award (Point II, infra) — $83,121.68 in costs and $177,293.70, or, alternatively $182,232.43 in attorneys' fees. Accordingly, Acquest Wehrle has met its moving burden, and the burden has shifted to the Government to dispute the entitlement to an award under the EAJA and/or the amount of any such award.

## POINT I

**ACQUEST WEHRLE HAS ESTABLISHED THAT IT IS ENTITLED TO RELIEF UNDER THE EAJA BECAUSE IT IS AN ELIGIBLE PARTY, IT IS THE PREVAILING PARTY IN THIS ACTION, IT HAS ALLEGED THAT THE GOVERNMENT'S POSITION WAS NOT SUBSTANTIALLY JUSTIFIED AND THAT RELIEF WOULD BE JUST, AND IT HAS TIMELY FILED THIS MOTION.**

Generally, in order to meet the moving burden for entitlement to relief under the EAJA, the movant must: (1) establish that it is an eligible party, which, for corporate parties, requires a showing that it has a net worth of less than $7 million and did not have more than 500 employees at the time that the action was commenced; (2) establish that it is the prevailing party; (3) allege that the government's position — either pre-commencement or post-commencement — was not substantially justified and that relief under the EAJA would be just; and (4) establish

3

that the motion has been made within 30 days of the final judgment. *See* 28 U.S.C. § 2412(d) (2017); *Pereira v. Astrue*, 739 F. Supp. 2d 267, 271 (E.D.N.Y. 2010); *Easley v. United States*, 719 F. Supp. 145, 145n.1 (W.D.N.Y. 1989). Here, as discussed below, Acquest Wehrle has met its moving burden because it has established each of these four requirements.

A. Acquest Wehrle Is an Eligible Party for Relief Under the EAJA Because It Is a Corporation That Had a Net Worth of Less Than $7 Million and Did Not Have More Than 500 Employees At the Time That This Action Was Commenced.

In order to constitute a "party" that is entitled to an award under the EAJA, a corporate party must have had a net worth that did not exceed $7 million and must have had less than 500 employees at the time that the action was commenced. 28 U.S.C. § 2412(d)(2)(B) (2017); *Easley v. United States*, 719 F. Supp. 145, 145n.1 (W.D.N.Y. 1989). With respect to the net-worth limit, a party can establish its net worth by submitting tax returns and a declaration specifying the corporation's net worth. *See Gate Guard Servs. v. Perez*, 14 F. Supp. 3d 825, 836 (S.D. Tex. 2014); *United States v. Eighty-Eight (88) Designated Accounts Containing Monies Traceable to Exchanges for Controlled Substances*, 786 F. Supp. 1578, 1580 (S.D. Fla. 1992).

Here, Acquest Wehrle has established that it is an eligible party for relief under the EAJA because it has submitted the declaration from Tony Fedele, who is the Chief Financial Officer for Acquest Holdings, Inc. (Rupp Decl., Ex. K ¶ 1). Through his capacity as the Chief Financial Officer, Mr. Fedele has knowledge of the financial condition of Acquest Wehrle (*id*.). He also is familiar with the generally accepted accounting principles (*id*.). Based on Mr. Fedele's knowledge and the 2009 tax returns for Acquest Wehrle, its net worth was less than $7 million in 2009 (*id*., Ex. K ¶ 4; *id*., Ex. K (Exhibit 1)). Mr. Fedele also averred that Acquest Wehrle had no employees in 2009 (*id*., Ex. K ¶ 5). Therefore, Acquest Wehrle is an eligible

party for relief under the EAJA because it had a net worth of less than $7 million and had less than 500 employees at the time that this action was commenced in 2009.

      B.      Acquest Wehrle Is the Prevailing Party Because This Action Was Dismissed Without Any Finding of Liability and Without Acquest Wehrle Paying Any <u>Damages, Penalties, Fines, or Other Monetary Award.</u>

The law is well settled that a plaintiff's voluntary dismissal under FRCP 41(a)(2) confers prevailing-party status on a defendant because it is the equivalent of an adjudication on the merits. *See*, *e.g.*, *Jewelers Vigilance Comm. v. Vitale*, No. 90 CIV. 1476 (MJL), 1997 WL 582823 at *6 (S.D.N.Y. Sept. 19, 1997) (citing *Nemaizer v. Baker*, 793 F.2d 58, 60 (2d Cir.1986)); *Kaleel v. Shalala*, 832 F. Supp. 738, 740 (S.D.N.Y. 1993) (cases cited therein). Here, Acquest Wehrle is the prevailing party because the Government voluntarily dismissed this action pursuant to FRCP 41(a)(2) (Dkt. No. 143). In fact, in its decision, this Court acknowledged that "a dismissal with prejudice leaves the defendant in the same position as a favorable and final resolution" (*id*. at 2) (citing *Schwarz v. Folloder*, 767 F.2d 125, 129 (5th Cir. 1985)). Therefore, Acquest Wehrle is a prevailing party for the purposes of the EAJA.

      C.      Acquest Wehrle Has Met Its Moving Burden With Respect Substantial Justification and Unjust Circumstances Because It Has Alleged That the Government's Position Was Not Substantially Justified and That Relief Under the <u>EAJA Would Be Just, Which It Also Has Supported With Evidence.</u>

With respect to the issues of substantial justification and unjust circumstances under the EAJA, the government has the burden to prove that its position was substantially justified or that relief would be unjust. *E.g.*, *Padula v. Colvin*, 602 F. App'x 25, 27 (2d Cir. 2015) (quoting *Healey v. Leavitt*, 485 F.3d 63, 67 (2d Cir. 2007)); *Green v. Bowen*, 877 F.2d 204, 207 (2d Cir. 1989); *D'Alessandro v. Mukasey*, No. 08-CV-914(RJA)(VEB), 2010 WL 1404909 at *18 (W.D.N.Y. Mar. 31, 2010), *adopted*, No. 08-CV-914, 2010 WL 2710623

(W.D.N.Y. July 6, 2010). In order to meet its moving burden, the movant only needs to "allege" a lack of substantial justification and that relief would be just. 28 U.S.C. § 2412(d)(1)(B) (2017); *Pavia v. Comm'r of Soc. Sec.*, No. 5:10-CV-0818 GTS/DEP, 2013 WL 5652497 at *4 (N.D.N.Y. Oct. 15, 2013); *Allegheny Bradford v. United States*, 350 F.Supp.2d 1332, 1336 (Ct. Int'l Trade 2004), *app. dismissed*, 132 F. App'x 837 (Fed. Cir. 2005).

Here, not only is Acquest Wehrle alleging that the Government's position that gave rise to this litigation was not substantially justified and that relief would be just, but it also is submitting evidence that strongly supports these allegations. In particular, the following evidence, inter alia, supports that the Government's position was not justified and that an award under the EAJA would be just:

(i) As discussed in greater detail in the next paragraph, the determination by the ACOE that the Wehrle site did not contain any jurisdictional wetlands, which was the result of a thorough investigation and evaluation (Rupp Decl., Ex. A);

(ii) The highly tenuous basis of CWA jurisdiction over the Wehrle site, which, again, was insufficient under the ACOE's initial evaluation and analysis (*see id.*, Ex. B);

(iii) The determination by the Town that any wetlands on the Wehrle site were "fairly limited," "isolated," "previously disturbed," and "insubstantial" (Dkt. No. 139-2 (Ex. B at 5));

(iv) The determination by the Town that any development of the Wehrle site would not have any adverse environmental effects (*see id*. at 1-7);

(v) The Government's decision to abandon this action (Dkt. No. 134); and

(vi) The jury verdict against the Town in the state-court action, which exposed the political motivations behind the regulatory decisions with respect to the Wehrle site (Dkt. No. 139-2 (Ex. C)).

Simply put, this evidence supports that the Government's position was nothing more than a politically-motivated decision or, at least, a decision that was made out of pure animosity towards Acquest Wehrle and Mr. Huntress, as opposed to a legitimate analysis under the CWA.

The most telling evidence that the Government's — and, more particularly, the EPA's — position was based on political favoritism or animosity as opposed to science or law is that the EPA went against the determination of the agency — *i.e.*, the ACOE — that has the expertise and the primary responsibility to determine whether a property is within the jurisdiction of the CWA (Rupp Decl., Exs. A, B).[2]  Simply put, after "review[ing] various maps, historic aerial photographs[,] and the administrative record" and after making "on-site observations," the ACOE determined that the Wehrle site was not subject to jurisdiction under the CWA (*id*., Ex. A).  Nevertheless, the EPA disregarded this determination, which is an extremely unusual occurrence because, in fact, it had only happened on *seven* occasions as of 2011 —

_____

[2]  Moreover, the jurisdictional decisions by the ACOE are legally binding on the ACOE and the EPA for a period of five years following the decision.  *U.S. Army Corps of Engineers v. Hawkes*, 136 S. Ct. 1807, 1812 (2016) (citing 33 U.S.C. §§ 1319, 1344(s); 33 CFR pt. 331, App. C; EPA, *Mem. of Agreement: Exemptions Under Section 404(F) of the Clean Water Act § VI–A* (1989)).  Here, the EPA circumvented this requirement and issued the self-serving "special case" determination by conveniently "agreeing" to allowing a federal court to vacate the ACOE's earlier determination (Rupp Decl., Ex. B (Mem. for the Record, dated Nov. 21, 2002, at 2)).  This "agreement" occurred when several neighboring property owners — the same owners who used improper political ties to get the Town to change its decision — challenged the ACOE's earlier determination in court (*id*.).  Notably, Acquest Wehrle was not made a party to the action challenging the ACOE's earlier determination and, therefore, had absolutely no opportunity to oppose vacating this determination, despite that it is the entity that owns the property that is directly affected.

including the determination here (*id.*, Ex. B; *id.* ¶ 12).[3]  Now, rather than defend this curious and highly unusual act by the EPA, the Government wants to abandon this action (Dkt. No. 134).

Furthermore, relief under the EAJA would be especially just here because the unconditional dismissal of this action has prevented a resolution of the central issue in this action, which is whether the Wehrle site is subject to jurisdiction under the CWA (Dkt. No. 76 ¶¶ 68-72; Dkt. No. 139-4).  Although the dismissal of this action is res judicata with respect to the Government's claims based on certain, specific conduct by Acquest Wehrle, the dismissal is not collateral estoppel on the issue of jurisdiction under the CWA because that issue was not fully litigated to a resolution on the merits.  Accordingly, in this respect, the dismissal here is the equivalent of a dismissal without prejudice, and the attorneys' fees and costs that Acquest incurred in defending this action did not provide it with a result that is as good as the result that it would have obtained — *i.e.*, a determination that the Wehrle site is not subject to jurisdiction under the CWA.  Therefore, in addition to the Government's position not being substantially justified, an award under the EAJA here especially is just.

      D.      **This Motion Is Timely Under the EAJA Because It Was Filed Within 30 Days <u>After the Expiration of the Right To Appeal the Judgment In This Action.</u>**

The 30-day time limit to file a motion under the EAJA begins to accrue once the judgment disposing of the action has become final; if no appeal is taken, accrual begins upon the expiration of the 30-day time period for an appeal.  *Impresa Construzioni Geom. Domenico Garufi v. United States*, 531 F.3d 1367, 1369-70 (Fed. Cir. 2008).  This rule applies equally to a

---

[3]  Citing Carstens et. al., *Isn't That Special? The EPA's Special-Case Determination for the Los Angeles River Extends Clean Water Act Protections Cast In Doubt By the Army Corps and the United States Supreme Court*, 4 Golden Gate Univ. Env'l L.J. 251, 252n.8 (June  4, 2011).

judgment that is the result of a voluntary dismissal under FRCP 41(a) because such dismissals are appealable. *Id.*; *Chappelle v. Beacon Commc'ns*, 84 F.3d 652, 654 (2d Cir. 1996). Here, since the judgment disposing of this action was filed on November 2, 2017, the 30-day time period for an appeal began to accrue on November 3, 2017[4] (Dkt. No. 144). Accordingly, Acquest Wehrle had until December 4, 2017 to take an appeal because this date is the first business day that is 30 days from November 3, 2017.[5] Since no appeal was taken, the judgment became final on December 4, 2017; thus, the 30-day time limit under the EAJA began to accrue the following day — December 5, 2017[6] — and expires on January 3, 2018. Therefore, this motion is timely because it has been filed on or before January 3, 2018.

**POINT II**

**ACQUEST WEHRLE IS ENTITLED TO AN AWARD OF $83,121.68 IN COSTS AND AN AWARD OF $177,293.70 OR, ALTERNATIVELY, $182,232.43 IN ATTORNEYS' FEES BECAUSE THESE ARE THE AMOUNTS THAT WERE NECESSARY TO DEFEND THIS ACTION.**

Under the EAJA, a court can award attorneys' fees and other expenses that were incurred in any civil action. 28 U.S.C. § 2412(d)(1)(A) (2017). To prove the amount of those fees and expenses and the fact that they were incurred, a party must only provide an itemized statement of the fees and expenses in support of the amounts that are being sought. *Id.* § 2412(d)(1)(B); *see also Kerin v. U.S. Postal Serv.*, 218 F.3d 185, 189 (2d Cir. 2000). Here, the declarations and the accompanying itemized statements that have been attached to the Rupp Declaration establish that Acquest Wehrle is entitled to an award of $83,121.68 in costs and of

---

[4] Under FRCP 6(a)(1)(A), the day that triggers a time period is not included when measuring that time period.

[5] Under FRCP 6(a)(1)(C), if the last day of a time period is "a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."

[6] *See* note 4, supra.

$177,293.70 or, alternatively, $182,232.43 in attorneys' fees because these amounts are what it incurred and what were necessary to defend against the Government's relentless, unwarranted, and unjustified prosecution.

A. Acquest Wehrle Is Entitled To an Award Of $83,121.68  In Costs Because These Costs Were for Expert Services Such as Studies, Analyses, Reports, Tests, and <u>Projects That Were Necessary for Its Defense In This Action.</u>

The EAJA unambiguously permits for recovery of "the reasonable expenses of expert witnesses" and "the reasonable cost of any study, analysis, engineering report, test, or project" which is "necessary for the preparation of the party's case."  28 U.S.C. § 2412(d)(2)(A) (2017).  Moreover, this recovery can extend to expenses that were incurred before the litigation commenced, but that nevertheless "directly relate" to the litigation.  *See Metro. Van & Storage v. United States*, 101 Fed. Cl. 173, 193 (2011) (cases cited therein).  Here, as evinced by the declarations and the itemized statements from those who provided the services that gave rise to these expenses, Acquest Wehrle incurred $83,121.68 in legal expenses and in expenses for experts who performed wetland studies, evaluations, analyses, reports, tests, and projects (Rupp Decl., Exs. C-K).[7]  These services were necessary for Acquest Wehrle's defense in this action because they were necessary to establish that no jurisdictional wetlands existed on the Wehrle site, which, again, was Acquest Wehrle's primary affirmative defense in this action (*id*. ¶ 33; Dkt. No. 76 ¶¶ 68-72).  Therefore, Acquest Wehrle is entitled to an award of $83,121.68 in costs.

---

[7]  The total amount of the invoices from V3 Companies — Exhibit I to the Rupp Declaration — have been split in half because those services were split between the Wehrle site and another site.

B.      Acquest Wehrle Is Entitled To an Award of $177,293.70 or, Alternatively, $182,232.43 In Attorneys' Fees Because a Special Factor or the Cost of Living, <u>Respectively, Warrants a Departure From the Statutory Cap On Attorneys' Fees.</u>

The amount that is recoverable for attorneys' fees under the EAJA is capped at $125 per hour, but this cap can be increased based on a finding of a "special factor" or on an increased cost of living. 28 U.S.C. § 2412(d)(2)(A) (2017). Here, a special factor exists that warrants an increase above the statutory cap for attorneys' fees because Acquest Wehrle needed to retain attorneys who had familiarity with the long, detailed history of the EPA's persecution of Acquest with respect to the Wehrle site. Alternatively, even if this Court does not find that a special factor exists here, Acquest Wehrle is entitled to $182,232.43 in attorneys' fees because this amount represents the increase from the statutory cap based on a cost-of-living adjustment.

1.      A Special Factor Exists Here Because Rupp Baase Needed To Represent Acquest Wehrle In This Action When No Other Attorneys Had the Unique, Distinctive Knowledge of the Lengthy History of the Wehrle Site <u>or of the EPA's Regulatory History With Respect To That Site</u>.

Generally, a court can award attorneys' fees above the EAJA statutory cap if the attorneys possessed "distinctive knowledge . . . needful for the litigation in question." *E.g.*, *Healey v. Leavitt*, 485 F.3d 63, 68-69 (2d Cir. 2007) (quoting *Pierce v. Underwood*, 487 U.S. 552, 572 (1988)). Specifically, one form of distinctive knowledge that is sufficient for an enhanced award is experience with an extensive factual background and history of litigation that is relevant to a particular action. *See Shah Bros. v. United States*, 9 F. Supp. 3d 1402, 1410-11 (Ct. Int'l Trade 2014). For example, in *Shah Bros.*, the attorneys had represented the EAJA movant in previous litigation that arose out of the same facts as the current litigation. *Id*. In fact, those attorneys had represented the movant for approximately 20 years in connection with its trade-related interests, which also were at issue in the current litigation. *Id*. at 1410n.19.

Accordingly, based on the attorneys' knowledge of the factual and procedural history — as well as their knowledge in the particular legal subject matter — the court held that an enhanced award of attorneys' fees was warranted. *Id*. at 1410-11.

Here, the facts are analogous to those in *Shah Bros.* because Acquest Wehrle's attorneys had been representing it from when the Government first began to unfairly target it throughout the various lawsuits that have arisen out this unfair regulatory harassment (*see* Rupp Decl. ¶¶ 17-26). Specifically, the Government — and, in particular, the EPA — have engaged in the proverbial witch hunt against Acquest Wehrle and its sister entities, which began with its improper "special case" determination overruling the ACOE's non-jurisdictional determination (Point I.C., supra). Following this extraordinary and highly-unusual act by the EPA, several lawsuits arose out of the Wehrle site (*id*. ¶¶ 16-22). One of these lawsuits was a state-court action against the Town, which required Rupp Baase to acquire an extensive and distinctive knowledge of the factual background of the purchase of the Wehrle site, the attempted development of that site, and the regulatory actions that were directed at that site (*id*.).

Since this distinctive knowledge was directly relevant and necessary for addressing many issues in this action, Acquest Wehrle needed to retain the same counsel because hiring new counsel would have required a tremendous duplication of legal work — to wit, new counsel would have needed to learn the factual and procedural history related to the Wehrle site (Rupp Decl. ¶ 22). Again, at the time that this action was commenced, the Government and Acquest Wehrle had been disputing the applicability of the CWA to the Wehrle site for several years (*see id*., Exs. A, B). Thus, retaining the same counsel that had been representing it

throughout all of its cases connected to the Wehrle site was the only efficient manner of representation.  As a result, Acquest Wehrle could not look for or shop around for other counsel whose rates would have been limited to the statutory cap of $125 per hour.  Therefore, a special factor warrants an enhanced award of attorneys' fees in this action, and Acquest Wehrle thereby is entitled to recover the actual amount that it expended on attorneys' fees — $177,293.70.

2.      Assuming, Arguendo, That This Court Decides That a Special Factor Does Not Warrant an Increase In Attorneys' Fees, an Increase Based On the Cost of Living Nevertheless Is Warranted.

The EAJA allows an award of attorneys' fees in an amount above the statutory cap when it is consistent with the increased cost of living for a particular area, which is determined by reference to the CPI.[8]  28 U.S.C. § 2412(d)(2)(A) (2017); *see also*, *e.g.*, *D'Alessandro v. Mukasey*, No. 08-CV-914(RJA)(VEB), 2010 WL 1404909 at *20 (W.D.N.Y. Mar. 31, 2010), *adopted*, No. 08-CV-914, 2010 WL 2710623 (W.D.N.Y. July 6, 2010).  The accepted method of calculating such an increase is to calculate a quotient by using the cost of living for the relevant region for the year that the $125 cap was imposed — 1996 — as the denominator and to use the cost of living for that region for each year that the fees were incurred as the numerator.[9]  *See Bean v. Barnhart*, 473 F. Supp. 2d 739, 742n.4 (E.D. Tex. 2007).  The resulting quotient then is multiplied by $125 to obtain an hourly rate that is adjusted for the cost of living for each year for which an award of fees is sought.  *Id*.

---

[8]  According to the U.S. Bureau of Labor Statistics, the CPI is "a measure of the average change over time in the prices paid by urban consumers for a market basket of consumer goods and services" (U.S. Bureau of Labor Statistics, *Frequently Asked Questions* (available at https://www.bls.gov/cpi/questions-and-answers.htm#Question_1) (last visited Dec. 26, 2017)).

[9]  A separate calculation must be performed for each year that fees were incurred and for which an award is sought.  *See Bean v. Barnhart*, 473 F. Supp. 2d 739, 742n.4 (E.D. Tex. 2007).

Here, based on this method of calculation, the adjusted hourly rate for each year that Acquest Wehrle incurred attorneys' fees in this litigation is $163.75 for 2006, $168.75 for 2007, $175 for 2009, $178.75 for 2010, $190 for 2013, $192.50 for 2015, $195 for 2016, and $198.75 for 2017 (Rupp Decl. ¶ 41). The amount of hours of legal services for each of these years is 149.9 for 2006, 7.8 for 2007, 29.55 for 2009, 376.35 for 2010, 21.8 for 2013, 5.7 for 2015, 31.3 for 2016, and 365.2 for 2017 (*id.*, Exs. C-F). Accordingly, multiplying these adjusted hourly rates with the hours of legal services, Acquest Wehrle is entitled to fee awards in the amount of $24,546.12 for 2006, $1,316.25 for 2007, $5,171.25 for 2009, $67,272.56 for 2010, $4,142 for 2013, $1,097.25 for 2015, $6,103.50 for 2016, and $72,583.50 for 2017. Therefore, in the event that this Court finds that a special factor does not warrant an award of the actual fees that were paid by Acquest Wehrle, this Court must award $182,232.43 in attorneys' fees based on the cost-of-living increases.

## CONCLUSION

For the foregoing reasons, Acquest Wehrle has established, one, that it is entitled to relief under the EAJA and, two, the amount of that relief. Moreover, relief under the EAJA especially is warranted here given the ridiculous fiasco to which the Government has subjected Acquest Wehrle. Specifically, in the face of political pressure from the same individuals who were improperly pressuring the Town, the EPA circumvented the binding nature of the ACOE's prior determination in order to embark on a years-long attack against Acquest Wehrle, its sister entities, and, more particularly, Mr. Huntress. In fact, the circumstances strongly suggest that the motivation of the EPA and the Government was Mr. Huntress exercise of a fundamental democratic right — to wit, challenging governmental authority and power. Even if the Government's and the EPA's conduct was not motivated by pure animosity, it certainly was not

based on any legitimate considerations such as science or the law. Nevertheless, after all of these years, the Government has decided that it simply wants to walk away.

The Government's decision to voluntarily dismiss this action has left a cloud of uncertainty regarding the legitimacy of its jurisdiction over the Wehrle site under the CWA. As a result, Acquest Wehrle still is uncertain with respect to what can occur on the property without having to subject itself to a costly permitting process. For this reason, Acquest Wehrle raised an affirmative defense based on the absolute lack of jurisdiction under the CWA with respect to the Wehrle site. The Government's dismissal, however, has precluded a resolution on the merits of this issue, which places it outside of any collateral-estoppel effect of the judgment in this action. As a result, an award of attorneys' fees and costs under the EAJA absolutely is warranted and is very much appropriate. Therefore, Acquest Wehrle respectfully requests that this Court grant an order that: (1) awards Acquest Wehrle $83,121.68 in costs; (2) awards Acquest Wehrle $177,293.70 in attorneys' fees, or, alternatively, $182,232.43 in attorneys' fees; and (3) grants Acquest Wehrle any such other and further relief that this Court deems just and proper.

Dated: January 2, 2018
      Buffalo, New York

                **RUPP BAASE PFALZGRAF CUNNINGHAM LLC**
                *Attorneys for Defendant, Acquest Wehrle, LLC*

                By:    /s/ R. Anthony Rupp III
                      R. Anthony Rupp III, Esq.
                      Matthew D. Miller, Esq.
                      1600 Liberty Building
                      Buffalo, New York 14202
                      (716) 854-3400
                      rupp@ruppbaase.com
                      miller@ruppbaase.com