UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                     Plaintiff,

      v.                                      09-cv-637 (LJV) (LGF)

ACQUEST WEHRLE, LLC,
ACQUEST DEVELOPMENT, LLC, and
WILLIAM L. HUNTRESS,

                     Defendants.

---

**DECLARATION IN SUPPORT OF DEFENDANT ACQUEST WEHRLE LLC'S
MOTION UNDER THE EAJA FOR AN AWARD OF COSTS AND ATTORNEYS' FEES**

        I, **R. ANTHONY RUPP III, ESQ.**, hereby declare under penalty of perjury, and

pursuant to 28 U.S.C. § 1746, that the following is true and correct:

        1.      I am an attorney at law duly licensed to practice in the State of New York

and the Western District of New York.  I am a partner with the law firm of Rupp Baase Pfalzgraf

Cunningham LLC ("**Rupp Baase**"), attorneys for Acquest Wehrle LLC, Acquest Development,

Inc., and William L. Huntress (collectively, the "defendants") in this action.  I fully am familiar

with the facts and circumstances set forth herein.

        2.      This declaration is being submitted in support of the motion by Acquest

Wehrle, LLC ("**Acquest Wehrle**") for an award of attorneys' fees and costs under the Equal

Access to Justice Act (28 U.S.C. § 2412) (the "**EAJA**").  In addition to this declaration, Acquest

Wehrle also is submitting the Memorandum of Law in Support of the Motion dated January 2,

2018.  Lastly, Acquest Wehrle is submitting true and accurate copies of the following exhibits

that are attached hereto in support of its motion:

**EXHIBIT A**  Letter, dated June 29, 2001, from Mr. Arthur K. Marks of the U.S. Army Corps of Engineers (the "**ACOE**") to Mr. Wayne T. Eisenbaum providing that the property at issue (the "**Wehrle site**") is not subject to jurisdiction under the Clean Water Act (the "**CWA**");

**EXHIBIT B**  Letter, dated December 2, 2002, from Mr. Walter E. Mugdan of the U.S. Environmental Protection Agency (the "**EPA**"), with enclosed materials, to Mr. William L. Huntress providing that the Wehrle site is subject to jurisdiction under the CWA;

**EXHIBIT C**  Itemized statements of legal services provided by Rupp Baase;

**EXHIBIT D**  Declaration of Paul J. Cambria, Esq. of Lipsitz Green Scime Cambria LLP ("**Lipsitz Green**"), with itemized statements attached;

**EXHIBIT E**  Declaration of Richard T. Sullivan, Esq. of Harris Beach PLLC ("**Harris Beach**"), with itemized statements attached;

**EXHIBIT F**  Declaration of Brad Cahoon, Esq. formerly of Snell & Wilmer, LLP and currently of Durham, Jones & Pinegar, PC, with itemized statements attached;

**EXHIBIT G**  Declaration of John Larson, Ph.D. of Applied Ecological Services, with itemized statements attached;

**EXHIBIT H**  Declaration of Ray Kagel, M.S. of Kagel Environmental, LLC, with itemized statements attached;

**EXHIBIT I**  Declaration of Tom Slowinski of V3 Companies, with itemized statements attached;

**EXHIBIT J**  Declaration of Alan Busacca, Ph.D. of VINITAS Consultants, LLC, with an itemized statement attached; and

**EXHIBIT K**  Declaration of Anthony P. Fedele of Acquest Holdings, with itemized statements attached.

3.    As discussed below, Acquest Wehrle is entitled to an award of $83,121.68

in costs and to an award of $177,293.70 or, alternatively, an award of $182,232.43 in attorneys'

fees because it paid these amounts for the services that were necessary to defend against the Government's prosecution of this action.

## PROCEDURAL POSTURE AND RELEVANT FACTUAL HISTORY

4.     A full recital of the procedural posture and relevant factual history of this action recently was provided in my declaration and the memorandum of law in opposition to the Government's motion to voluntarily dismiss this action pursuant to FRCP 41(a)(2).  This declaration, several exhibits attached thereto, and the memorandum of law already are before this Court as Document Numbers 139-1, 139-2, 139-3, and 139-4 in this action.

5.     As discussed at length in my previous declaration, Acquest Wehrle bought the Wehrle site in good faith, after having performed due diligence, and without knowledge of a building moratorium for that site (Dkt. No. 139-2 (Ex. B at 8)).

6.     Following its purchase of the Wehrle site, Acquest Wehrle discovered that the Town of Amherst, New York (the "**Town**") in conjunction with the EPA enacted a 50-year moratorium prohibiting all development on the Wehrle site (Dkt. No. 139-2 (Exs. A, B)).  Since the Town had neglected to record the moratorium and neither the EPA nor the Town otherwise put affected landowners on notice, Acquest Wehrle did not know of it when Acquest Wehrle purchased the Wehrle site (*id.* (Ex. B at 8)).

7.     Nevertheless, Acquest Wehrle cooperated with the Town and the EPA by subjecting itself to and beginning a lengthy and costly permitting process in order to develop the Wehrle site (Dkt. No. 139-2 (Exs. A-C)).

8.      Initially, it appeared as though the Town, the EPA, and the ACOE would treat Acquest Wehrle fairly as it went through the permitting process.

9.      For example, in August of 2000, the Town agreed to submit a request to the EPA for a waiver from the moratorium because Acquest Wehrle's proposed development would not have any adverse environmental effect on the area, as well as because it had neglected to record the moratorium in the first place (Dkt. No. 139-2 (Ex. B)).

10.      Also, in 2001 and after a comprehensive analysis of the Wehrle site, the ACOE issued a determination that it did not contain any wetlands that were subject to the jurisdiction of the ACOE or the EPA under the CWA; a copy of this determination from the ACOE is attached hereto as **Exhibit A**.

11.      Following the ACOE's decision, however, the EPA issued a "special case" determination in 2002 that held that the Wehrle site did include wetlands that were subject to jurisdiction under the CWA; a copy of this "special case" determination is attached hereto as **Exhibit B**.

12.      Based upon the undersigned's research, "special case" determinations are very unusual because as of 2011, the EPA had done this on only seven occasions — including the determination for the Wehrle site (Carstens et. al., *Isn't That Special? The EPA's Special-Case Determination for the Los Angeles River Extends Clean Water Act Protections Cast In Doubt By the Army Corps and the United States Supreme Court*, 4 Golden Gate Univ. Env'l L.J. 251, 252n.8 (June  4, 2011) (available at https://digitalcommons.law.ggu.edu/cgi/viewcontent. cgi?referer=https://www.searchencrypt.com/&httpsredir=1&article=1061&context=gguelj)).

13.     The determination here was a direct result of opposition to the development of the Wehrle site for an office park by a group of owners of property neighboring the Wehrle site (Ex. B (Mem. for the Record, dated Nov. 21, 2002, at 2)).

14.     After those property owners commenced an action against the ACOE to challenge its 2001 determination, the ACOE and the EPA conveniently decided to rescind that 2001 determination and issue the new 2002 determination (Ex. B (Mem. for the Record, dated Nov. 21, 2002, at 2)).

15.     Next, these property owners targeted the Town and its decision to request a waiver of the moratorium from the EPA (Dkt. No. 139-2 (Ex. F at 809:4-5)).  The Town also eventually yielded to the property owners' protests and revoked its request for a waiver (*id*.).

16.     Since the Town's malfeasance occurred after Acquest Wehrle had spent over $2 million towards developing the Wehrle site, Acquest Wehrle commenced a state-court action against the Town (*see* Dkt. No. 139-2 (Ex. C)).

17.     Rupp Baase represented Acquest Wehrle in the state-court action, which required Rupp Baase to acquire an in-depth knowledge of the factual history underlying the Wehrle site — including the passage of the moratorium, the extensive development and permitting process, and the events leading up to the Town's decision to request a waiver and its subsequent decision to revoke that waiver.

18.     In fact, in the state-court action against the Town, thousands of pages of documents were produced as evidence of the factual history surrounding the Wehrle site.

Additionally, over a dozen depositions were performed to discover and evince this factual history.

19.     Around the same time that the state-court action was commenced, the Government commenced this civil prosecution against Acquest Wehrle for alleged development activities on the Wehrle site.

20.     Of course, since this action and the state-court action both were based on the Wehrle site and the various regulatory acts by the Town, the ACOE, and the EPA with respect to that site, this action and the state-court action inherently involved the same factual background.  As discussed above and in light of the extent of discovery in the state-court action, this factual background is extensive.

21.     While the state-court action proceeded through discovery of the same factual background that is relevant to this action, this action was stayed pending two other criminal prosecutions related to the Wehrle site.

22.     By the time that this action resumed, the state-court action against the Town had gone through discovery and ultimately a trial.  As a result of Rupp Baase's representation of Acquest Wehrle throughout this state-court action, it had acquired an extensive knowledge of the factual history the Wehrle site and the various disputes surrounding Acquest Wehrle's attempted development of that site.  Accordingly, when this action resumed, Acquest Wehrle needed Rupp Baase to continue to represent it in this action because of its unique and thorough knowledge of the relevant factual history of the Wehrle site, which was necessarily acquired for the state-court action.

23. Attached hereto as **Exhibit C** is a true and accurate copy of itemized statements of the legal services that Rupp Baase provided to Acquest Wehrle and that were necessary to defend it in this action. This statement includes itemized entries that describe the services provided and the amount of time spent on those services, as well as the hourly rates that were charged for those services. Acquest Wehrle subsequently paid my firm in accordance with the amounts listed on those statements.

24. Additionally, before Rupp Baase assumed representation of Acquest Wehrle, Lipsitz Green represented Acquest Wehrle. A declaration from the lead attorney from Lipsitz Green for this action and a copy of itemized statements from Lipsitz Green for the legal services that were necessary to defend Acquest Wehrle in this action are attached hereto as **Exhibit D**.

25. Likewise, before Lipsitz Green assumed representation of Acquest Wehrle, Harris Beach represented Acquest Wehrle. A declaration from the accounting associate at Harris Beach and a copy of itemized statements from Harris Beach for the legal services that were necessary to defend Acquest Wehrle in this action are attached hereto as **Exhibit E**.

26. Also, at various times throughout this action, Bradley R. Cahoon, Esq. — formerly of Snell & Wilmer, LLP and currently of Durham, Jones & Pinegar, PC — provided legal services to Acquest Wehrle. A declaration from Mr. Cahoon and a copy of itemized statements from his firms for the legal services that were necessary to defend Acquest Wehrle in this action are attached hereto as **Exhibit F**.

27.     I have been practicing law in Erie County for 24 years and based on my experience the rates that are listed on the itemized statements from Rupp Baase, Lipsitz Green, and Harris Beach are consistent with the customary and usual rates that are charged by attorneys in this area.

28.     In addition to legal services, Acquest Wehrle hired several other experts and consultants to perform various wetland studies, evaluations, analyses, reports, tests, and projects that were necessary to defend it in this action; declarations from these experts and consultants — as well as itemized statements — are attached hereto as **Exhibit G** through **Exhibit J**.

29.     The expenses that are discussed in the declaration and that are listed in the itemized statements that are attached hereto as **Exhibit K** are from before this action was commenced, but they nevertheless are for services that were necessary to defend Acquest Wehrle in this action because they are services related to wetland evaluations on the Wehrle site.

30.     After Acquest Wehrle had incurred these expenses for its attorneys and the various expert services that were necessary to defend it in this action, the Government filed a motion for a voluntary dismissal under FRCP 41(a)(2) (Dkt. No. 134).

31.     In response to the Government's abandonment of this action, Acquest Wehrle filed a cross motion to request that any voluntary dismissal include an important condition — to wit, that the Government stipulate that no jurisdictional wetlands exist on the Wehrle site (Dkt. No. 139).

32. This condition was important to Acquest Wehrle because it needs certainty on the issue of whether or not the Wehrle site contains wetlands that are subject to jurisdiction under the CWA, which is necessary for Acquest Wehrle to determine whether or not it can perform work on that site in the future and to determine the cost of any such work (Dkt. No. 139-3 (Ex. L)).

33. Again, as discussed at length in Acquest Wehrle's papers in support of its cross motion, the issue of whether or not the Wehrle site is subject to regulation under the CWA is the central issue in this action (*see* Dkt. No. 76 ¶¶ 68-72). This issue would have been determined had this action been fully litigated because it was the essence of Acquest Wehrle's primary affirmative defense (*see id.*).

34. Nevertheless, this Court denied Acquest Wehrle's cross motion and granted the Government's motion, and the clerk subsequently entered judgment pursuant to this Court's decision on November 2, 2017 (Dkt. Nos. 143, 144).

35. With respect to the issue of CWA jurisdiction for the Wehrle site, this Court reasoned that Acquest Wehrle must commence a declaratory judgment action in order to obtain a final adjudication of this issue (Dkt. No. 143 at 2-3).

36. With respect to the attorneys' fees and costs that Acquest Wehrle had incurred towards resolving this issue in this action, this Court's decision indicated that a motion under the EAJA would be the appropriate manner in which to seek reimbursement from the Government (Dkt. No. 143 at 3).

37.     Accordingly, Acquest Wehrle is making this motion for an award of its attorneys' fees and costs under the EAJA.  For the reasons that are discussed at length in its accompanying memorandum of law, Acquest Wehrle has met its moving burden for this award because: (1) it is an eligible party by showing that it has a net-worth of less than $7 million and that it had less than 500 employees at the time that this action was commenced; (2) it is the prevailing party in this action; (3) it has alleged that the Government's position was not substantially justified and that an award under the EAJA would be just; and (4) this motion has been filed within 30 days of the final judgment.

38.     With respect to the amount of the award of costs, Acquest Wehrle has established this amount through the declarations and itemized statements that are attached hereto as **Exhibit G** through **Exhibit K**.  The services that are listed in those itemized statements were necessary for Acquest Wehrle's defense of this action because they were necessary to establish that the Wehrle site did not include any jurisdictional wetlands.

39.     With respect to the amount of the award of attorneys' fees, Acquest Wehrle has established the actual amount of fees that it has incurred through this declaration, Rupp Baase's itemized statements, the declaration and itemized statements from Lipsitz Green, the declaration and itemized statements from Mr. Cahoon, and the declaration and itemized statements from Harris Beach.  For the reasons that are discussed at length in its accompanying memorandum of law, Acquest Wehrle is entitled to an award of the full, actual amount that it paid in fees.

40. In the event, however, that this Court determines that Acquest Wehrle is not entitled to an award of the full, actual amount that it paid in attorneys' fees, it is entitled to an amount based on the statutory cap under the EAJA as adjusted for the cost of living (the "**COI**") based on the consumer price index (the "**CPI**").

41. Based on the CPI, the following chart shows the COI adjustment for the Northeast region for the years when the legal services were provided:

| Year | Annual CPI rate[1] | CPI quotient[2] | COI adjusted rate |
|------|------|------|------|
| 2006 | 215 | 1.31 | 163.75 |
| 2007 | 220.512 | 1.35 | 168.75 |
| 2009 | 229.343 | 1.4 | 175 |
| 2010 | 233.868 | 1.43 | 178.75 |
| 2013 | 249.038 | 1.52 | 190 |
| 2015 | 252.185 | 1.54 | 192.5 |
| 2016 | 254.850 | 1.56 | 195 |
| 2017 | 259.424[3] | 1.59 | 198.75 |

The CPI quotient is calculated by dividing the annual CPI rate for each respective year by the annual CPI rate for 1996 — 163.6 — which is the year that the current statutory cap under the EAJA was imposed. The COI adjusted rate is calculated by multiplying the CPI quotient by the current statutory cap under the EAJA — $125. As discussed in the accompanying memorandum

---

[1] The annual CPI rate for these calculations was retrieved using the data tool that is available from the U.S. Bureau of Labor Statistics (the "BLS"). To retrieve this data, the user must go to the BLS's CPI webpage at: https://www.bls.gov/cpi/; go to the "CPI data" tab; select the "Regional Resources" tab under the "CPI data" tab; and click on the "Northeast" region.

[2] The CPI quotient has been rounded to the nearest one hundredth.

[3] The annual COI rate for 2017 was calculated by using only the first 11 months of the year because at the time of this motion, only the data for those months was available.

of law, this is the proper method to calculate the COI adjusted rate for an award of attorneys' fees under the EAJA. Based on this calculation and on the number of hours listed on the itemized statements from Rupp Baase, Lipsitz Green, Harris Beach, and Mr. Cahoon, at a minimum Acquest Wehrle is entitled to an award of attorneys' fees in the amount of $182,232.43.

42. Therefore, based on the foregoing and the reasons that are discussed in greater detail in the accompanying memorandum of law, this Court must grant an order that: (1) awards Acquest Wehrle $83,121.68 in costs; (2) awards Acquest Wehrle $177,293.70 in attorneys' fees, or, alternatively, awards Acquest Wehrle $182,232.43 in attorneys' fees; and (3) grants Acquest Wehrle any such other and further relief that this Court deems just and proper.

Dated: January 2, 2018
      Buffalo, New York

**RUPP BAASE PFALZGRAF CUNNINGHAM LLC**
*Attorneys for defendant Acquest Wehrle, LLC*

By:   s/ R. Anthony Rupp III
    R. Anthony Rupp III, Esq.
1600 Liberty Building
Buffalo, New York 14202
(716) 854-3400
rupp@ruppbaase.com