UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                             Plaintiff,

               v.

ACQUEST WEHRLE, LLC,
ACQUEST DEVELOPMENT, LLC, and
WILLIAM L. HUNTRESS,

                           Defendants.
_____

|  |  |
|---|---|
| | REPORT<br>and<br>RECOMMENDATION |
| | 09-CV-00637V(F) |

APPEARANCES:         MERRICK B. GARLAND
                           UNITED STATES ATTORNEY GENERAL
                           United States Department of Justice
                           Attorney for Plaintiff
                           601 D Street NW
                           Washington, District of Columbia  20535
                                     and
                           BRADLEY L. LEVINE,
                           JOHN EDWARD SULLIVAN, and
                           MEGHAN ELIZABETH GREENFIELD, Trial Attorneys
                           Environmental Enforcement Section
                           P.O. Box 7611
                           Ben Franklin Station
                           Washington, District of Columbia  20044-7611
                                     and
                         PHYLLIS FEINMARK
                         Assistant Regional Counsel
                         United States Environmental Protection Agency
                         Water and General Law Branch, of Counsel
                         Region 2
                         290 Broadway, 16th Floor
                         New York, New York  10007-1866

                         JAMES P. KENNEDY
                         UNITED STATES ATTORNEY
                         Attorney for Plaintiff
                         MARY K. ROACH
                         Assistant United States Attorney, of Counsel
                         Federal Centre
                         138 Delaware Avenue
                         Buffalo, New York  14202

RUPP BAASE PFALZGRAF CUNNINGHAM LLC
Attorneys for Defendants
ANNE KATHERINE BOWLING,
DAVID ROSS PFALZGRAF, JR.,
MATTHEW D. MILLER, and
R. ANTHONY RUPP, III, of Counsel
424 Main Street
Suite 1600
Buffalo, New York  14202

DURHAM JONES & PINEGAR, P.C.u
Attorneys for Defendants
BRADLEY R. CAHOON, of Counsel
111 S. Main Street
Suite 2400
Salt Lake City, Utah  84111

## JURISDICTION

This case was first referred to the undersigned pursuant to 28 U.S.C.

§ 636(b)(1)(A) and (B), for all pretrial matters including preparation of a report and

recommendation on dispositive motions, by Honorable John T. Curtin on April 12, 2010

(Dkt. 23).  On April 12, 2016, the matter was reassigned to Honorable Lawrence J.

Vilardo who, on February 22, 2020 (Dkt. 157), referred to the undersigned the instant

motion for costs and attorney fees pursuant to the Equal Access to Justice Act, filed

January 2, 2018 (Dkt. 146).[1]


## BACKGROUND

Plaintiff United States of America ("Plaintiff"), commenced this action on July 14,

2009, asserting claims for relief against Defendant Acquest Wehrle LLC ("Acquest" or

---

[1] A fee petition brought pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, is a dispositive matter.  *Janes v. Saul*, 2020 WL 5261125, at *1 n. 1 (S.D.N.Y. Feb. 5, 020) (citing *Choudhury v. Barnhart*, 2005 WL 2592048, at *1 (S.D.N.Y. Oct. 11, 2005)).

"Defendant"), for violations of §§ 301 and 309 of the Clean Water Act of 1972 ("CWA"),

33 U.S.C. § 1251 *et seq.*, with regard to a parcel of real property owned by Acquest and

located at 2190 and 2220 Wehrle Drive in the Town of Amherst, New York ("the

Property'). The Complaint asserted three claims against Acquest including that

between July 2006 and August 2007, Acquest engaged in unauthorized discharges of

stormwater and unauthorized discharges of dredge or fill material at the Property, as

well as violated an administrative order issued by the United States Environmental

Protection Agency ("EPA") on May 25, 2007, directing Acquest to undertake measures

to promptly come into compliance with the CWA by ceasing such discharges and

submitting plans for restoring the waters into which the alleged unlawful discharges

occurred, to their condition prior to the discharges. On April 11, 2011, Plaintiff filed the

Amended Complaint (Dkt. 67) ("Amended Complaint"), with leave of the court, asserting

no new claims for relief, but adding two Defendants including Acquest Development

LLC ("Acquest Development"), and William L. Huntress ("Huntress"). On June 9, 2011,

Defendants filed an answer to the Amended Complaint (Dkt. 76).

Document discovery ensued, but no depositions were taken, and the matter was

stayed twice including on April 26, 2010 (Dkt. 39), and November 17, 2011 (Dkt. 97),

while parallel criminal proceedings were resolved. On April 17, 2016, the parties

stipulated to vacating the stays and allowing discovery to proceed. (Dkt. 115). Several

motions regarding discovery were filed and the matter was referred to mediation. Prior

to mediation, however, Plaintiff moved pursuant to Fed.R.Civ.P. 41(a)(2) to voluntarily

dismiss the Amended Complaint (Dkt. 134), which Defendants did not oppose, but on

October 13, 2017, filed a cross-motion (Dkt. 139) for the court to impose one of two

"curative conditions," *i.e.*, either that Plaintiff be precluded from commencing any future action based on jurisdictional wetlands, *i.e.*, wetlands subject to regulation under the CWA, located on the Property, or awarding to Defendants their costs and attorney fees incurred in defending this action. In a Decision and Order filed November 1, 2017 (Dkt. 143) ("D&O"), District Judge Vilardo granted Plaintiff's motion to dismiss the action with prejudice, and denied Defendants' cross-motion in its entirety, explaining Defendants request for a covenant against future litigation was more properly the subject of a declaratory action, D&O at 2-3, and that Defendants' alternative request for an award of costs and attorney fees could be brought only pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.

Accordingly, on January 2, 2018, Defendant Acquest filed the instant motion seeking pursuant to 28 U.S.C. § 2412 an award of costs and attorney fees incurred in defending the instant action (Dkt. 146) ("Defendant's Motion"), attaching the Memorandum of Law in Support of the Motion by Acquest Wehrle, LLC for an Award of Attorneys' Fees and Costs Under the EAJA (Dkt. 146-1) ("Defendant's Memorandum"), the Declaration of R. Anthony Rupp, III, Esq. in Support of Defendant Acquest Wehrle LLC's Motion Under the EAJA for an Award of Costs and Attorneys' Fees (Dkt. 146-2) ("Rupp Declaration") with exhibits A through K ("Defendant's Exh(s). ___") (Dkts. 146-3 through 146-13). On March 19, 2018, Plaintiff filed the United States' Response to Defendant Acquest Wehrle LLC's Motion Under the EAJA for an Award of Costs and Attorneys' Fees (Dkt. 151) ("Plaintiff's Response"), attaching the Declaration of Assistant United States Attorney Meghan E. Greenfield, Esq. (Dkt. 151-1) ("Greenfield Declaration"). On April 18, 2018, Defendant Acquest filed the Reply Memorandum of

Law in Further Support of the Motion by Acquest Wehrle, LLC for an Award of Attorneys' Fees and Costs Under the EAJA (Dkt. 156) ("Defendant's Reply"), attaching the supplemental Declaration of Anthony P. Fedele (Dkt. 156-1) ("Fedele Supplemental Declaration").  Oral argument was deemed unnecessary.

Based on the following, Defendant's Motion should be DENIED.

## FACTS[2]

At the center of this action is whether a parcel of real property located at 2190 and 2220 Wehrle Road in the Town of Amherst, Erie County, New York ("the Property"), constitutes so-called "jurisdictional wetlands" subject to the CWA, requiring the owner to obtain various permits prior to any development of the property.  At an Amherst Town Board ("the Town Board") meeting on July 5, 1983, the Town Board, in connection with accepting a grant from New York State Department of Environmental Conservation ("NYS DEC") and the EPA, for the construction of a sewer ("the Sewer"), adopted a moratorium ("the moratorium") prohibiting for 50 years sewer hook-ups or connections from any building, facility, or other construction on certain real property ("the Site") within the Town of Amherst ("the Town"), without first obtaining written approval from the EPA Regional Administrator.  The Property is located within the bounds of the Site and thus is subject to the moratorium.  The moratorium, however, was never recorded so as to put on notice potential future purchasers of parcels from the Site that such real property was subject to the moratorium such as Defendants.[3]

---

[2] Taken from the pleadings and motion papers filed in this action.
[3] Although no copy of the deed by which Defendants acquired the Property is in the record, nor is the date of purchase disclosed, Plaintiff does not dispute that because the moratorium was not properly recorded, Defendants' purchase of the Property was without notice of the moratorium.

On June 29, 2001, the Army Corps of Engineers ("ACOE"), issued a determination that only isolated wetlands were located on the Property and that such wetlands were not subject to jurisdiction under the CWA, *i.e.*, were "non-jurisdictional." Defendant's Exh. A (Dkt. 146-3). Despite the ACOE's determination, the EPA and ACOE subsequently worked together to perform an on-the-ground assessment of the Site and on November 21, 2002, issued a Memorandum advising that the EPA had made a so-called "Special Case" designation that the wetlands on the Property were jurisdictional and thus subject to the CWA. Defendant's Exh. B (Dkt. 146-4). The Special Case designation was based on field observations showing water flowed through a stream on the Property and emptied into Town Ditch 18, and continued flowing into Ellicott Creek and the Niagara River, a navigable waterway of the United States.

After purchasing the Property and discovering the moratorium, Defendants did not challenge the EPA's designation. Rather, Acquest approached the Town about devising a plan to permit development on the Property, including requesting a sanitary sewer tap-in waiver from the EPA. On March 14, 2006, the ACOE issued to Acquest Development an unvalidated, provisional permit for the discharge of fill material into 2.9 acres of wetlands on the property for the construction of an office park. While inspecting the property on July 13, 2006, the ACOE observed development activities for which no permit had been issued. The Town then withdrew the tap-in waiver request. On May 25, 2007, the EPA notified Acquest of the alleged CWA violations including that Acquest had removed trees, moved soil around the Property and engaged in the unauthorized discharge of storm waters from the Property into waters qualifying under

the CWA as "waters of the United States."  Throughout this litigation, Defendants have maintained the Town revoked the waiver request after neighboring property owners opposed Defendants' development of the Property.

On May 25, 2007, the EPA issued an administrative order directing Acquest to undertake measures to promptly come into compliance with the CWA by ceasing all development and discharges on the Property, and submitting plans for restoring the Property's jurisdictional waters to their condition prior to the unlawful discharges.   When Defendants did not comply with the May 25, 2007 order, the EPA commenced this action against Defendant Acquest.

While this action was pending, Defendant Acquest commenced in New York Supreme Court, Erie County, an action against the Town ("the state court action"), alleging the Town, by withdrawing the tap-in waiver, unlawfully deprived Defendants of the use of the Property.  A jury trial was conducted on the state court action upon the conclusion of which the jury returned a verdict favorable to Acquest and awarding Acquest $ 3 million in damages.  While the state court action was proceeding, the instant action was stayed pending resolution of two criminal actions pertaining to the Property.

On September 25, 2017, Plaintiff moved to voluntarily dismiss the instant action (Dkt. 134).  While Defendants did not oppose the voluntary dismissal of the action, Defendants requested, as noted, the dismissal be subject to either a court order prohibiting Plaintiff from commencing any future action based on the CWA with regard to the Property, or an award to Defendants of costs and attorney fees incurred in connection with the instant action.  In the November 1, 2017 D&O, Judge Vilardo, after

granting Plaintiff's motion to dismiss the action with prejudice, denied Defendants' cross-motion in its entirety, explaining that Defendants' request for a covenant against future litigation sought a "broad curative requirement" for which the court lacked jurisdiction and which was better suited for a declaratory action, D&O at 2-3, and that Defendants' alternative request for an award of costs and attorney fees could be brought only pursuant to Plaintiff's waiver of its sovereign immunity under the EAJA, but that because such an application can be made only within 30 days of the entry of final judgment, Defendants' motion was premature. *Id*. at 3-4. Defendant Acquest then filed the instant motion seeking an award of costs and attorney fees pursuant to the EAJA.

## DISCUSSION

**1.      EAJA Attorney Fee Awards**

"In enacting the Equal Access to Justice Act, Congress wished to ease the burden upon small businesses of engaging in litigation with the federal government." *Unification Church v. I.N.S.*, 762 F.2d 1077, 1082 (D.C.Cir. 1995). Toward that end, the EAJA provides costs, including attorney fees, "may be awarded to the prevailing party in any civil action brought by or against the United States or any agency . . . in any court having jurisdiction of such action. 28 U.S.C. § 2412(a)(1). "The EAJA renders the United States liable for attorney's fees for which it would otherwise not be liable, and thus amounts to a partial waiver of sovereign immunity." *Ardestani v. INS*, 502 U.S. 129, 137 (1991). "Any such waiver must be strictly construed in favor of the United States." *Id*. (citing cases). In setting forth the standard for awarding costs and attorney's fees to "prevailing parties," the text of 28 U.S.C. 2412(d)(2)(B) establishes

Congress intended to limit recovery of costs and fees "to individuals or to small entities that find particularly burdensome the ever-rising costs of litigation." *Unification Church*, 762 F.2d at 1082 (citation omitted).

To be eligible for an award of costs and fees under the EAJA, the movant must satisfy certain requirements including (1) the movant must have incurred and be responsible for paying the costs and attorney's fees and must be eligible which, for purposes of corporate entities, requires net worth less than $ 7 million, and not more than 500 employees, 28 U.S.C. § 2412(d)(2)(B); (2) the movant must be the prevailing party, 28 U.S.C. § 2412(b); (3) the government's position must not have been substantially justified, either pre- or post-commencement, 28 U.S.C. § 2412(d)(1)(A); and (4) the motion must be made within 30 days of the final judgment. 28 U.S.C. § 2412(d)(1)(B). The burden is on the movant to establish each of the first three criteria is met, *Scarborough v. Principi*, 541 U.S. 401, 414 (2004) (internal quotation omitted), but the government must demonstrate its position was "substantially justified." *Pierce v. Underwood*, 487 U.S. 552, 565 (1986) (citations omitted). Even if the movant satisfies all four criteria, the court has discretion to not award costs and attorney fees upon determining "that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). Further, the hourly rate for attorney fees awarded under the EAJA is capped at $ 125 per hour "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A).

In the instant case Acquest has not met all four criteria for an award of costs and attorney fees under the EAJA. Although Plaintiff disputes neither that Defendant's

Motion was timely filed, Plaintiff's Response at 6, nor Defendant's argument,

Defendant's Memorandum at 5, that the voluntary dismissal of the action pursuant to

Fed.R.Civ.P. 41(a)(2) is the equivalent of an adjudication on the merits, rendering

Acquest the prevailing party for purposes of the EAJA's provision for costs and

attorney's fees, the court does not further address these criteria, but only the remaining

two criteria, including whether Defendant is an eligible party, and whether Plaintiff's

position was substantially justified.

### A.    Eligible Party

To be a "party" eligible for an award of costs and attorney fees under the EAJA, a

corporation must not have a net worth exceeding $ 7 million, nor employ more than 500

employees when the action is commenced.[4]  28 U.S.C. § 2412(d)(2)(B)(ii).  Here, the

parties do not dispute that Acquest employed fewer than 500 workers, leaving only

Acquest's financial qualification to be addressed.  To establish a party's financial

eligibility for costs and fees under the EAJA, the movant "must present sufficient

evidence so that his or her net worth may be ascertained by the court."  *Fields v. United

States*, 26 Fed.Cl. 376, 382 (1993) ("A conclusory affidavit without supporting evidence

is inadequate to establish such 'party' status."), *aff'd*, 64 F.3d 676 (1995).  Here,

Acquest submitted in support of establishing its eligibility a declaration from one

Anthony P. Fedele ("Fedele"), Chief Financial Officer ("CFO") of Acquest Holdings, Inc.,

---

[4] Although Defendants do not discuss why only Defendant Acquest has sought an award of costs and fees, the court notes Plaintiff's suggestion, Plaintiff's Response at 8, that when the action was commenced, neither Huntress nor Acquest Development qualified as a "party" either as an individual, 28 U.S.C. § 2412(d)(2)(B)(i) (net worth less than $ 2 million when action is commenced), or as a corporation, 28 U.S.C. § 2412(d)(2)(B)(ii) (net worth less than $ 7 million and fewer than 500 employees).  *See Owner-Operator Independent Drivers Ass'n, Inc. v. Federal Motor Carrier Safety Admin.*, 675 F.3d 1036, 1038 (7th Cir. 2012) (inferring that individual petitioners who did not join in EAJA fee petition did not meet the qualifications of a "party").

a non-party.  Defendant's Exh. F (Dkt. 146-13) ("Fedele Declaration").  Fedele avers

that when the instant action was commenced in 2009, Acquest had a net worth of less

than $ 7 million, and fewer than 500 employees.  Fedele Declaration ¶ 3.  In support,

Fedele attaches a copy of Acquest's balance sheet for the years ended December 31,

2008 and 2009.  Balance Sheet, Fedele Declaration Exh. 1 (Dkt. 146-13 at 5).  For that

time period, Acquest had zero employees, and its liabilities of $ 2,226,086.14 exceeded

its assets of $ 2,177,121.30, resulting in a negative total equity of $ 48,964.84.  *Id*. ¶ 4.

Based on this information, the accuracy of which Plaintiff does not challenge, Acquest

qualifies as a "party" as defined for corporate entities.  28 U.S.C. § 2412(d)(2)(B)(ii).

Plaintiff, however, argues that despite Acquest's negative equity and lack of

employees, Acquest fails to qualify as a party under the corporate definition because

the supporting documentation establishes Acquest is merely a shell corporation and, as

such, did not incur any of the costs or attorney fees at issue.  Plaintiff's Response at 8-

10.  Defendant replies that because Defendant Acquest holds title to the Property,

Acquest is the real party in interest and, as such, eligible for an award of costs and

attorney's fees under the EAJA.  Defendant's Reply at 18-19.

It is within a district court's discretion whether to award costs and attorney fees

under the EAJA.  *See Peirce v. Underwood*, 487 U.S. 552, 563 (1988) (construing EAJA

provision allowing for an award of costs and attorney fees, 28 U.S.C. § 2412(d), as

requiring deference to the district court's determination).  Where multiple parties are

sued, the court may consider the fee arrangement among the parties and determine

whether, under the EAJA, absent an award of costs and attorney's fees, only some of

the parties will be liable for costs and attorney fees pursuant to a fee arrangement.

*Unification Church*, 726 F.2d at 1082-83.  Only those parties who, pursuant to a fee arrangement, will be liable for costs attorney fees if court-awarded costs and fees are denied are to be considered by the district court as the real party in interest for an award of costs and attorney's fees.  *Id.  See American Association of Retires Persons v. E.E.O.C.*, 873 F.2d 402, 406-07 (D.C.Cir. 1989) ("we caution district courts not to award EAJA fees when ineligible plaintiffs merely join eligible plaintiffs to take a free ride through the judicial process at the government's expense." (quotation omitted)).  As such, in the instant case, to establish its eligibility for an award of costs and attorney's fees under the EAJA, Acquest was required to demonstrate that Acquest, and not its co-defendants, *i.e.*, Acquest Development or Mr. Huntress, paid the costs and attorney fees Acquest seeks to recover here.  *Id*.  Acquest, however, has not met this burden.

Rather, the plethora of documents Defendant submitted in support of its award for costs and attorney's fees under the EAJA establish communications between the ACOE, the EPA, defense counsel, or environmental specialists and either Mr. Huntress or another officer of Acquest Development, *see* Defendant's Exhs. A through K (Dkts. 146-3 through 146-13), strongly suggests Defendant Acquest is merely a holding company for the Property.  For example, Defendant's Exh. B is a December 2, 2002 letter from the EPA to Defendant Huntress, as president of Defendant Acquest Development, discussing the November 22, 2002 joint determination by the EPA and the ACOE that the Property is subject to jurisdiction under the CWA.  Defendant's Exh. B, Dkt. 146-4 at 2-4.  Defendants also submit the Declaration of Richard T. Sullivan, Esq., who avers he rendered legal services to Defendant Acquest, Defendant's Exh. E, Dkt. 146-7 at 2-3, yet attaches in support itemized billing statements showing Defendant

Acquest Development was billed for the work.  *Id*. at 4-39.  Similarly, Defendant's Exh. F, Dkt. 146-8, consists of the Declaration of Bradley R. Calhoon, Esq., who avers rendering services in connection with the Aquest Werhle civil matter, but attaches supporting documentation establishing Acquest Development was billed for such services.  Environmental studies of the Property undertaken by environmental professionals billed Huntress for their analytical work on the Property.  *See*, *e.g.*, Defendant's Exh. H (Dkt. 146-10) (Declaration of Ray L. Kagel, Jr., M.S., PWS attaching invoices regarding "Wehrle Avenue Property litigation billed to Huntress).  This is consistent with the Declaration of Anthony P. Fedele, Defendant's Exh. K (Dkt. 146-13), averring that as CFO of Acquest Holdings, Inc., "and related holdings," Fedele Declaration ¶ 1, he is knowledgeable of Acquest's operations, *id*. ¶¶ 1-3, and describes Acquest as "a single purpose real estate holding company whose only assets (with the exception of an immaterial balance in its checking account and capitalized equipment costs) are the real property located at 2190 and 2220 Wehrle Drive in Amherst, New York, *id*. ¶ 4 and Dkt. 146-13 at 5, and that Acquest had no employees.  Fedele Declaration ¶ 6.  Although Fedele maintains Acquest incurred expenses in connection with this legal action, including "surveying and mapping, soil and wetlands evaluations and analyses, and tree inspections," *id*. ¶ 7, again, the attached supporting documentation, *i.e*., invoices seeking payment for such services, are all billed to Huntress or Acquest Development,  Dkt. 146-13 at 7-33, reinforcing that expenses Acquest incurred were paid for by another person or entity.  This is further consistent with the fact that Acquest had no employees and, as such, could not act in violation of the CWA.  Nor is the explanation proffered in the Fedele Supplemental Declaration (Dkt.

156-1), sufficient to establish Acquest is the real party in interest. *Fields*, 26 Fed.Cl. at 382 (party's EAJA-eligibility status cannot be established by a "conclusory affidavit" without supporting documentation).  In particular, Fedele avers that "any and all amounts underlying the award that Acquest is requesting in this motion were charged to Acquest as liabilities under generally accepted accounting principles ("GAAP"). Therefore, whoever wrote the checks to pay for these costs is irrelevant."  Fedele Supplemental Declaration ¶ 3.  Nor does Acquest corroborate this statement with any documentation to establish this actually occurred.  Significantly, however, Defendant does not submit in support of its position a copy of any ledger, or a bank account statement showing the movement of funds from Acquest's account to the account of Acquest Development or Huntress to pay the documented invoices, and self-serving statements that are in direct contrast to documented evidence that only Acquest Development and Huntress were billed for, and actually paid, legal services and environmental testing and analyses in connection with the instant action are insufficient to establish Acquest is the real party in interest that incurred the costs, including attorney's fees, requested in the instant motion.  *See A.A.R.P.,* 873 F.2d at 406-07 (observing the "fee arrangement" among the parties seeking award of costs and attorney's fees under the EAJA is helpful to determining whether a party is responsible for its own costs and legal fees and thus is the real party in interest).  Thus, that as Fedele asserts, under GAAP, such liability could have, or should have been accrued, it does not follow that they did so in this case.

Accordingly, Defendant has failed to meet its burden of establishing Acquest Wehrle is the real party in interest and thus eligible for an award of costs and attorney's

fees under the EAJA because an award of costs and attorney's fees under the EAJA will reimburse Defendant for costs it incurred with regard to the instant litigation. On this basis, Defendant's Motion should be DENIED.

### B. Justified Action

Alternatively, Plaintiff argues the instant action was substantially justified and based on Acquest's alleged discharge from July 2006 to August 2007 of stormwater associated with industrial activity into waters of the United States in violation of the CWA. Plaintiff's Response at 13-18. In opposition, Plaintiff relies on evidence in the record, including that the ACOE initially determined the Property did not contain any jurisdictional wetlands, which calls into question the subsequent unusual "special case" determination jointly made by the ACOE and EPA that the Property does contain jurisdictional wetlands, the Town's subsequent determination that any development of the Property would not have adverse environmental effects, Plaintiff's decision to abandon the instant action, and the jury verdict against the Town in the state action which Defendant maintains "exposed the political motivations behind the regulatory decisions . . . ." Defendant's Reply at 5-8; Defendant's Reply at 1-14. There is no merit to Defendant's argument.

Preliminarily, insofar as Plaintiff voluntarily discontinued the instant action, with prejudice, Plaintiff's voluntary dismissal of an action "cannot be viewed as unjustified simply on the ground that the proceedings were voluntarily terminated on terms unfavorable to it." *Kuhns v. Board of Governors of Federal Reserve System*, 930 F.2d 39, 44 (D.C.Cir. 1991) (citing *Underwood*, 487 U.S. at 568-69). Rather, to be considered "substantially justified" in the context of a request for costs and attorney fees

under the EAJA, Plaintiff's position need not be "justified to a high degree, but rather has been said to be satisfied if there is a genuine dispute . . . or if reasonable people could differ as to the appropriateness of the contested action." *Pierce*, 487 U.S. at 565. Relevant to the instant case, a plaintiff can voluntarily dismiss an action for a number of reasons having nothing to do with the possible liability of the defendant, including lack of resources to continue the litigation, or a discernment that the evidence against the defendant may not be enough to persuade a finder of fact.  In the instant case, the only reason Plaintiff provided for voluntarily dismissing the action is Plaintiff's "exercise of its enforcement discretion," Dkt. 134 at 1-2 (citing *B.F. Goodrich Co. v. Murtha*, 958 U.S. 1192, 1205 (2d Cir. 1992) (an enforcement decision "must reflect limited agency resources, enforcement priorities, and other administrative constraints")).  Further, the evidence in the record, at best, establishes only that there is evidence supporting the positions of both Plaintiff and Defendant as to whether the "special case" joint determination of the ACOE and the EPA was correct.  Under these circumstances, the court is unable to find that Plaintiff's position over the course of this litigation was unjustified.  *See United States v. $ 19,047.00 in U.S. Currency*, 95 F.3d 248, 251-52 (2d Cir. 1996) (considering "fact-based, subjective, and in many cases, finely-tuned" determinations insufficient to establish government's position was substantially unjustified for purposes of awarding costs and attorney fees under the EAJA).

**2.    Fee Calculation**

Should the District Judge disagree with the initial recommendation that Plaintiff's request for an award of costs and attorney fees pursuant to the EAJA should be denied, the court addresses in the alternative whether the requested costs and fees are

supported by the record.  Specifically, Defendant requests an award of $ 83,121.68 in

costs for such expert services as studies, analyses, reports, tests, and projects

necessary to defend this action, Plaintiff's Memorandum at 9-10, and attorney's fees in

the amount of either $ 177,293.70, calculated based on the statutorily approved hourly

rate, Defendant's Memorandum at 11, or $ 182,232.43, based on the so-called "special

factor" permitting attorney fees to be calculated about the statutory rate where the

higher rate is necessary to retain an attorney possessing "'distinctive knowledge . . .

needful for the litigation in question.'"  *Id*. at 11-14. (quoting *Healy v. Leavitt*, 485 F.3d

63, 68-69 (2d Cir. 2007)).  As stated, Discussion, *supra*, at 9, the hourly rate for attorney

fees awarded under the EAJA is capped at $ 125 per hour "unless the court determines

that an increase in the cost of living or a special factor, such as the limited availability of

qualified attorneys for the proceedings involved justifies a higher fee."  28 U.S.C.

§ 2412(d)(2)(A).  Plaintiff, however, does not challenge the hourly rates Defendant used

in calculating the attorney's fees requested; rather, Plaintiff maintains that of the

$ 50,000 requested in expenses and attorney's fees, approximately $ 150,000 was

incurred for work before the instant action was commenced, Defendant's Response at

19-20, and an additional $ 30,000 is unrecoverable because it was unnecessary

including $ 4,500 for work on discovery matters after Plaintiff advised it was interested

in dismissing the action, $ 23,000 Defendant maintains it expended in opposing

Plaintiff's motion to voluntarily dismiss, and $ 1,400 in fees to prepare a press release

regarding the Plaintiff's voluntary dismissal of the action.  *Id*. at 20-21.  In further support

of its motion, Defendant maintains Plaintiff has failed to dispute the reasonableness of

the request.  Defendant's Reply at 17.  A review of the record establishes that if

Defendant is awarded any costs and fees, they should be limited to those actually incurred in connection with the instant action and necessary for its litigation.

A review of the documentation Defendant submits in support of its request for costs and attorney's fees includes invoices for fees from five law firms, and nine experts. *See* Defendant's Exhs. C through J (Dkts. 146-4 – 146-12). Because no depositions were taken, nor any dispositive motions filed, the majority of the work pertains to costs for analyses and testing to prepare studies pertaining to the area, as well as legal fees incurred in connection with the state action Defendant brought against the Town, and the criminal actions. *Id.* Although Defendant maintains these costs would have been incurred even absent such related litigation, Defendant points to no caselaw holding that costs and attorney fees incurred in related or similar litigation may be recovered from Plaintiff on a motion brought under the EAJA for costs and attorney's fees, and the court's research reveals none. Accordingly, should the district judge find Defendant is entitled to an award of costs and attorney's fees incurred in connection with this action, then such award should be limited to $ 70,000, an amount Plaintiff agrees pertains to this action pursuant to the EAJA. Plaintiff's Response at 22-23.

## CONCLUSION

Based on the foregoing, Defendants' Motion seeking an award of costs and attorney's fees under the EAJA should be DENIED; alternatively, if the District Judge finds Defendant is entitled to such an award, the amount of costs and fees should be limited to $ 70,000.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      May 24th, 2021
            Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

<u>**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**</u>
*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:    May 24th, 2021
          Buffalo, New York